FILED

2010 Jan-21  PM 01:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MARY W. TARTT,                    ]
                                 ]
    Plaintiff,               ]
                                 ]
    vs.                      ]   7:09-CV-01468-LSC
                                 ]
STATE FARM MUTUAL                ]
AUTOMOBILE INSURANCE             ]
COMPANY and CLINT                ]
CUMMINGS,                        ]
                                 ]
    Defendants.              ]
                                 ]
                                 ]
                                 ]
                                 ]

MEMORANDUM OF OPINION

I.    Introduction.

    Plaintiff Mary W. Tartt, ("Tartt" or "Plaintiff"), a resident of Sumter

County, Alabama, filed suit against State Farm Mutual Automobile Insurance

Company ("State Farm") and Clint Cummings ("Cummings," collectively

"Defendants") in the Circuit Court of Sumter County, Alabama on June 23,

2009.  Defendants removed this action to this Court on July 24, 2009,

averring federal jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of

citizenship).  Defendants claim that Cummings, an Alabama resident, was fraudulently joined to this matter in order to defeat diversity.

On July 22, 2009, Defendant Clint Cummings filed a motion to dismiss, stating that no set of facts in support of Plaintiff's allegations would entitle her to relief against Cummings. (Doc. 5 at 1.)  On August 21, 2009, Plaintiff filed a motion to remand, contending that Cummings was properly joined to the action, and that, in any event, the removal of this case was procedurally defective under 28 U.S.C. § 1446. (Doc. 8.) Plaintiff concurrently filed two sworn affidavits in support of her motion to remand: one from her counsel, John Owens, and the other from Edmond Bell, Clerk of the Circuit Court of Sumter County. (Docs. 8-2 & 8-3.)  Defendants filed a motion to strike the affidavit of John Owens on September 3, 2009. (Doc. 10.)  The parties subsequently filed oppositions and replies to each other's motions.

The issues raised in these motions have been fully briefed.  Upon due consideration, this Court finds that while the removal of this case was not procedurally defective, Defendant Cummings was not fraudulently joined. Accordingly, this case is due to be remanded to the Circuit Court of Sumter County, Alabama.

II.    Background.[1]

According to the complaint, Mary Tartt was involved in an automobile accident on May 1, 2006, on McFarland Boulevard in Tuscaloosa, Alabama. Her vehicle, which was insured by State Farm, was struck by another vehicle, which was insured by GEICO. The parties do not dispute the other driver's liability for the accident. State Farm pursued a subrogation claim against the other driver in September of 2007, allowing Plaintiff's collision coverage deductible to be refunded. In February of 2008, State Farm, acting through Defendant Cummings, settled its claim against GEICO for the $20,000 liability limit of the other driver's policy.

As a result of the car accident, Plaintiff suffered a rotator cuff tear which required injections, physical therapy, an MRI, and ultimately surgery. On August 12, 2006, at State Farm's request, Plaintiff sent a signed release of medical information to State Farm, authorizing it to obtain any and all medical, psychological, psychiatric, osteopathic or other related records pertaining to her treatment. On October 27, 2006, State Farm sent an

---

1. The facts recited in this opinion are, unless otherwise indicated, taken from the allegations contained in Plaintiff's complaint.

acknowledgment of this release, and requested information regarding the identities of Plaintiff's medical providers. Plaintiff provided this information, and State Farm began to pay Plaintiff's medical bills from the $5,000 of medical benefits afforded by her policy. A month later, on November 28, 2006, this fund was exhausted, and Plaintiff's file was transferred to Clint Cummings to handle the underinsured motorist claim.[2]

Over a year passed without any apparent action on the claim or communication between the parties. In January of 2008, in anticipation of the settlement with GEICO, Plaintiff's counsel sent to Cummings all of the medical records gathered to that point. On February 20, Cummings sent Plaintiff's counsel a letter in which he consented to the GEICO settlement, but claimed that State Farm was "missing some itemized bills and records concerning [Plaintiff's] injury."  The letter stated that resolution of Plaintiff's uninsured motorist claim could begin upon receipt of a complete list.

---

2. Plaintiff's policy with State Farm included $100,000 in uninsured motorist coverage. Plaintiff states this amount as $60,000 in paragraph 6 of the complaint, and only later learned–from State Farm–that the amount of uninsured motorist coverage was actually $100,000. (Doc 8-2 at 2.)

From March through May of 2008, Plaintiff's attorney repeatedly sent Cummings copies of Plaintiff's medical records. He frequently asked if any additional information was needed, and stated his belief that enough information had been provided to settle the claim for the policy limits. A response from Cummings was not received until June, and it did not acknowledge the repeated  communications from Plaintiff's counsel. Rather, Cummings' response on June 9, 2008, consisted of a letter consenting to the settlement with GEICO — the same settlement that had already been accomplished in February. The following day, Cummings sent yet another request for Plaintiff's medical history and doctor's notes, with no reference to the numerous materials which had been supplied to him over the previous months.

Plaintiff's attorney responded by sending 14 signed medical authorizations to Cummings on June 17, 2008, together with a letter expressing his client's eagerness to resolve the claim. Six weeks passed with no response, so Plaintiff's attorney sent another letter on July 31, 2008, demanding the policy limits be tendered within 10 days. Cummings responded on August 7, stating that an appropriate offer would be extended

once full medical documentation had been received. Three weeks passed with no offer extended, nor any further communication made to Plaintiff. Plaintiff then filed the instant action, alleging three counts in her complaint: Breach of Contract, Bad Faith, and Conspiracy.

III.  III.  Analysis.

A.  Procedural Deficiency.

The Court first addresses the alleged procedural deficiency raised by Plaintiff. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*,  511 U.S. 375, 377 (1994). Cases originally filed as state court actions may be removed to federal court, subject to "both jurisdictional and procedural considerations." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1194 (11th Cir. 2007).

The procedural requirements for removal are governed by 28 U.S.C. § 1446. To remove an action filed in State court, the defendant must file notice of removal with the district court within 30 days of receiving a copy of the initial pleading. 28 U.S.C. § 1446(a)–(b). Where multiple defendants are involved, "the limitations period for removal expires upon thirty days

from service on the . . . last-served defendant." *Bailey v. Janssen Pharmaceutica, Inc.,* 536 F.3d 1202, 1203 (11th Cir. 2008) Then, "[p]romptly after the filing of such notice of removal . . . [the] defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of [the] State court, which shall effect the removal." 28 U.S.C. § 1446(d). Where a party objects to removal on procedural grounds, a motion to remand "must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). Absent such a party-made motion, a district court may not remand a case on the basis of a procedural defect, as "[section] 1447(c) does not authorize any *sua sponte* remand order not based on subject matter jurisdiction." *Whole Health Chiropractic & Wellness, Inc. v. Humana Medical Plan, Inc.* 254 F.3d 1317, 1319 (11th Cir. 2001).

In this case, Defendants' joint Notice of Removal was filed on July 24, 2009. (Doc. 8.) Plaintiff's Motion to Remand was filed on August 21, 2009. (Doc. 1.) Since Plaintiff's motion was made within the requisite 30-day window dictated by § 1447(c), evaluation of the alleged procedural deficiency is properly before this Court.

Plaintiff does not contend that the Notice of Removal to *this* Court was improperly filed. Defendant Cummings was served with notice on June 24, 2009, and State Farm was served on July 23, 2009.[3] The filing of notice in federal court was undisputedly timely. The sole issue here concerns the filing of notice with the state court. Plaintiff asserts, and Defendants do not deny, that notice of removal was filed in state court on August 4, 2009, eleven days after it was filed in federal court. An affidavit of Edmond Bell, Clerk of the Circuit Court of Sumter County, supports this claim. (Doc. 8-3.) According to Plaintiff, this eleven-day delay in filing amounts to a violation of the removal statute for essentially two reasons: first, that the filing was "outside the thirty (30) day removal window," (Doc. 8 at 5), and second, that  the delay resulted in a waste of resources fo the state court as  well as for Plaintiff. (*Id.*)

The first of these arguments is entirely without merit, as it is based on

3. While the Eleventh Circuit has recently articulated its decision to follow the "last-defendant" rule (*See Bailey*, 536 F.3d at 1203), the distinction is irrelevant here for three reasons. First, the Notice of Removal was timely with respect to either date. Second, while actual service upon State Farm was effected on July 23, 2009 (Doc. 12 at 8), State Farm acknowledges, in the Notice of Removal, that it received service through its counsel of record on the same date that Cummings was served. Third, the issue of timeliness in the Notice of Removal was not raised in Plaintiff's Motion to Remand.

a misreading of the statute. Plaintiff's cited proposition that "the thirty day removal window should be strictly construed" (Doc. 8 at 5) may be perfectly valid, yet it is entirely beside the point here. The statute does clearly state in § 1446(b) that "notice of removal . . . shall be filed within thirty days," but this provision applies specifically to the notice filed in *federal* court. The provision requiring that notice be given to the state court uses notably different language. Section 1446(d) requires that notice to the state court be given "[p]romptly after" the filing of notice in federal court. In order for Plaintiff's first argument to be valid, "[p]romptly after" must be interpreted as "within [the same] thirty days." Nothing in the statute suggests that these terms should be thus conflated. To the contrary, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Freemanville Water System, Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1209 (11th Cir. 2009)(*quoting Duncan v. Walker*, 533 U.S. 167, 173 (2001)). All the more so here, when the terms on their face are inherently incompatible. The phrase "[p]romptly after" certainly indicates that no time

should be lost, but it would be absurd to require the word "after" to effectively mean "at the same time."[4] Common sense, if nothing else, requires that such an interpretation be rejected.

The second argument offered by Plaintiff appears at first to present a closer question. While the above provides an easy example of what "[p]romptly after" does *not* mean, articulating what it *does* mean is a more delicate task. Plaintiff claims that the delay in filing notice to state court "result[ed] in a waste of judicial resources and of Plaintiff's resources." (Doc. 8 at 5.) This claim, if true, would appear to present a colorable argument. It seems reasonable to read the statute's requirement of prompt notice as contemplating the avoidance of inconvenience, to both the parties and to the court from which the action is removed. In this particular case, however, a decision on this point is rendered unnecessary by a lack of facts supporting Plaintiff's claim.

Plaintiff states that, "[s]ince the Court in Sumter County had not

---

4. To be sure, Congress certainly could have required that notice to both federal and state courts be given at some point within the same thirty-day window, either concurrently or consecutively. But as it is written, no sensible reading of the statute could support such an interpretation.

received notice of removal, it held an unnecessary hearing in the case on August 11, 2009." (Doc. 8 at 5.) This hearing is alleged to have occurred as a direct result of "Defendant's failure to promply notify the state court of the removal." (*Id.*) This argument fails for two reasons. First, as the documentation provided by Plaintiff demonstrates, notice was received by the state court prior to the date of the hearing. The affidavit of Edmond Bell, Clerk of the Sumter County Circuit Court, states that the Notice of Removal was filed in state court on August 4, 2009, a full week before the August 11 hearing. (Doc. 8-3.) Even if the eleven-day delay in filing is assumed to be the fault of the Defendants, they cannot in fairness be blamed for a hearing which was held a week after notice was received. It is not clear, however, that the delay in filing is even attributable to the Defendants.

Defendants assert that Notice of Removal was sent by mail to the state court on July 22, the same day that notice was filed with this Court. (Doc 12 at 7.) A copy of the notice sent to the Sumter County Clerk has been provided to the Court by Defendants, and it is in fact dated July 22, 2009. The date and authenticity of this letter is undisputed by Plaintiff.

Defendants offer no explanation as to why it took thirteen days for this notice to eventually be filed in Sumter County, but no such explanation could reasonably be expected of them. Under the circumstances, the curious delay in filing cannot fairly be charged to Defendants. In any event, as no proceedings occurred in the interim, the delay cannot be said to have wasted the resources of either Plaintiff or the state court. The Court finds no procedural flaw warranting remand.

B.    Fraudulent Joinder

For removal to be proper, the court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).   In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  The removing party bears the burden of establishing subject-matter jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (stating that the defendant bears the burden of proving subject-matter jurisdiction in removed actions).

Before this Court can exercise diversity jurisdiction, complete diversity of citizenship must exist. "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). The Plaintiff in this matter is a resident of Alabama, as is Defendant Cummings. At first glance then, diversity jurisdiction would appear to be lacking. Defendants argue, however, that Cummings has been fraudulently joined to this action.

This Court is free to disregard the citizenship of any defendant it determines has been fraudulently joined. *Triggs*, 154 F.3d at 1287 (11th Cir. 1998). In *Triggs*, the Eleventh Circuit Court of Appeals described three situations when a defendant can be considered to have been fraudulently joined:

> Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity. Joinder has been deemed fraudulent in two situations. The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. In *Tapscott [v. MS Dealer Service Corp.]*, 77 F.3d at 1355 (11th Cir. 1996), a third situation of fraudulent joinder was identified—i.e., where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the

diverse defendant has no real connection to the claim against the nondiverse defendant.

*Id.* (internal citations omitted).

The burden on the removing party to prove fraudulent joinder, however, is a "heavy one." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *see also, De Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). In assessing a fraudulent joinder objection, "the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *De Perez,* 139 F.3d at 1380. The "determination of whether a resident has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, *supplemented by any affidavits and deposition transcripts submitted by the parties.*" *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (emphasis in original) (quoting *De Perez*, 139 F.3d at 1380). "The proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." *Id.* at 1322-23 (internal citations omitted).

Even though factual considerations are resolved in favor of the

plaintiff, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Id.* at 1323.  In other words, if the Defendant offers sworn statements supporting the allegation of fraudulent joinder, the Plaintiff must present evidence to dispute the assertions in the affidavits or other evidence.  *Id.*  When evidence submitted by the Defendant is undisputed, "the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint."  *Id.*  The Court simply cannot, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*"  *Id.* (quoting *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393-94 (5th Cir. 2000)(emphasis in original)(internal citations omitted)).

In addition to factual considerations, the Plaintiff must state a valid claim.  However, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court."  *Triggs*, 154 F.3d at 1287 (internal citations omitted).  When assessing possibility, the Eleventh Circuit has colorfully stated that "[i]n considering *possible* state law claims, possible

must mean more than such a possibility that a designated residence can be hit by a meteor tonight.  That is possible.  Surely, as in other instances, reason and common sense have some role." *Legg*, 428 F.3d at 1325 n.5 (internal citations omitted).  In other words, a plaintiff must show that the potential for legal liability is "reasonable" and "not merely theoretical." *Id.* (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 1992)).

Defendants here assert the first sort of fraudulent joinder outlined in *Triggs*, that "there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." 154 F.3d at 1287. Count II of Plaintiff's Complaint is a claim against both Cummings and State Farm for Bad Faith, and Count III claims that both are involved in a Conspiracy.[5] Defendants contend that neither of these counts are valid against Cummings, and argue that "[t]here is no legal means for maintaining any cause of action against him under Tartt's Complaint." (Doc. 5 at 8.)

As a threshold matter, Defendants claim that under Alabama law, it

---

5. Count I of the Complaint, alleging Breach of Contract, mentions only State Farm, and is not applicable to Defendant Cummings.

is legally impossible for Cummings to have entered into a conspiracy with his employer. *See Williams v. Marcum*, 519 So. 2d 473, 475 (Ala. 1987)("[T]here is no "conspiracy" where the only parties to the alleged conspiracy are the corporation and one of its agents and the corporation's liability is predicated upon the theory of respondeat superior through the acts of the agent with whom it allegedly conspired.").[6] The same case, however, also recognizes that in Alabama, "a corporation 'may be liable for damage to a third person resulting from a conspiracy where *two or more of its agents* participated in the conspiracy.'" *Id. (quoting Lawler Mobile Homes Inc. v. Tarver*, 492 So. 2d 297, 306 (Ala. 1986))(emphasis added). Plaintiff contends that the present situation fits into the latter category, as "Clint Cummings was not

---

6. In addition to Alabama state cases, Defendants refer the Court to a case decided by a sister court, *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1220-21 (N.D. Ala. 2006). (Doc. 16 at 2-3.) In *Pfizer*, the court applied the "intra-corporate conspiracy" doctrine, which dictates that "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." 471 F. Supp. 2d at 1220. This Court declines to find the doctrine applicable in the present case. First, the application of the doctrine in *Pfizer* was unnecessary to the court's ultimate conclusion. Before applying it, the court in *Pfizer* had already determined on other grounds that there was no valid conspiracy claim. Additionally, this Court's determination of fraudulent joinder requires an evaluation of the Plaintiff's claims under applicable *state* law. The federally recognized "intra-corporate conspiracy doctrine" as articulated in *Pfizer* appears to be directly at odds with the Alabama cases dealing with the question. Absent recognition of the doctrine under Alabama law, its application here would be inappropriate.

the only agent of State Farm who participated in the conspiracy." (Doc. 8 at 3.)

In support of this assertion, Plaintiff relies on a 694 page file obtained from State Farm through Defendants' counsel, Michael Beers. Information pertaining to this collection of documents has been submitted to the Court via an affidavit of John Owens, counsel for Plaintiff. (Doc. 8-2.) This affidavit claims that State Farm's records document the involvement of several of its employees in the handling of Ms. Tartt's claim. A Mr. Chad Carter is specifically mentioned to have had an active role, as a supervisor over Cummings. Other employees are stated to have been involved in the alleged conspiracy as well, although Defendant Cummings is said to have been the "most involved." (*Id.* at 3.)

Defendants vehemently object to the Court's consideration of Mr. Owens' affidavit. In their "Motion to Strike Owens' Affidavit," Defendants assert that it is "premised on hearsay [and] should not be admitted." (Doc. 10 at 4.) The information which Owens gained from the State Farm file is even alleged to be "hearsay in its purest form." (*Id.*) In support of this contention, Defendants rely on Rule 801 of the Federal Rules of Evidence

and its Alabama analogue. Defendants also cite *Home Bank of Guntersville v. Perpetual Federal Sav. and Loan Ass'n*, 547 So.2d 840 (Ala. 1989). In *Home Bank*, an affidavit of Home Bank's general counsel was ruled to be inadmissible hearsay for the purposes of a summary judgment motion after determining that "his information concerning these matters must have come to him from his client or from others." *Id.* at 841-42.

In likening the affidavit of Owens to that of the attorney in *Home Bank*, Defendants ignore a critical distinction, and would do well to review Rule 801 in its entirety. While the information in the *Home Bank* affidavit was presumed to have come from "his client or from others," the information in Owens' affidavit came not from his own client, nor from unknown "others." Rather, it came from State Farm itself.  Rule 801(d)(2) of both the Federal and Alabama Rules of Evidence specifically excludes admissions by party-opponent from the hearsay rule. Out of court statements made by a party's opponent  are, by definition, not hearsay when offered against the party making the statement. Whatever Defendants might mean by the phrase "hearsay in its purest form," it is certainly not an apt description of statements which are specifically excluded from the very

definition of hearsay. The Motion to Strike Owens' Affidavit is denied.

Even if more than one employee were involved in the alleged conspiracy, a claim for conspiracy cannot stand on its own.  "It is well established that 'liability for civil conspiracy rests upon the existence of an underlying wrong and that if the underlying wrong provides no cause of action, then neither does the conspiracy.'" *Ex parte Alabama Dept. of Transp.*, 764 So.2d 1263, 1271 (Ala. 2000)(*quoting Jones v. BP Oil Co.*, 632 So.2d 435, 439 (Ala.1993)). *See also Keith v. Witt Auto Sales, Inc.*,  578 So.2d 1269, 1274 (Ala. 1991)("The gist of an action alleging civil conspiracy is not the conspiracy itself, but rather, the wrong committed."). As Defendants point out,  "the purpose of conspiracy is to expand the liability outward." (Doc. 12 at 13.) *See Nance v. Maxwell Federal Credit Union (MAX)*, 186 F.3d 1338, 1342 (11th Cir. 1999)("The allegation of a conspiracy serves merely to expand liability for the underlying wrong to persons who were not directly involved in the wrongful actions."). Defendants claim that the alleged underlying wrong here will not support a claim for conspiracy, and that liability is "legally precluded . . .from flowing outward" in this instance. (Doc. 12 at 13.)

The underlying wrong in this case, the tort of bad faith, was first recognized by the Alabama Supreme Court in 1981. *See State Farm Fire & Cas. Co. v. Slade*, 747 So.2d 293, 303 (Ala. 1999). To establish a claim for bad faith against an insurer in "normal" cases, a plaintiff must demonstrate that she "is entitled to a directed verdict on the [breach of] contract claim." *Id.* at 304 *(quoting National Savings Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala.1982)). In so-called "abnormal" cases, where an insured "intentionally or recklessly fail[s] to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review," the same stringent "directed-verdict-on-the-contract-claim" standard does not apply. *Slade*, 747 So.2d at 307 (*quoting Thomas v. Principal Financial Group*, 566 So.2d 735, 744 (Ala.1990)). In either case, however, the existence of an insurance contract is a threshold requirement, as "the insurer's intentional refusal to settle a direct claim" forms the basis of a bad faith claim. *See Chavers v. National Security Fire & Casualty Co.*, 405 So.2d 1, 7 (Ala.1981).

Defendants contend that because Tartt's contract was with State Farm, and not Cummings, that Cummings is therefore precluded from any

liability under a bad faith claim. In Defendants' Opposition to Plaintiff's Motion to Remand (Doc 12), they note that "Alabama law has specifically stated there is no cause of action for breach of contract against any party other than the insurance company issuing the policy." (*Id.* at 11.) In support of this assertion, Defendants cite *Henson v. Celtic Life Ins. Co.*, 621 So.2d 1268, 1270 n.2 (Ala. 1993) ("Obviously, the defendant Jones cannot be held liable for the breach of a contract to which he was not a party . . . ."). Defendants contend that the same argument should apply to the claim for bad faith. Interestingly, however, the very footnote they cite deals with a bad faith claim, and does so on notably different grounds. Rather than relying on the fact that the defendant was not a party to the contract, the court in *Henson* stated that "Jones cannot be held liable on the bad faith count" because "the decision of whether to pay the claim in question was for Celtic [the insurance company] to make." 621 So.2d at 1270 n.2. But unlike the defendant in *Henson*, a sales agent, Defendant Cummings is directly involved in the payment of claims. Indeed, his role in the "decision of whether to pay the claim in question," *id.*, and his failure to do so, is what led to his involvement in this action.

The question of whether an insurance company's agents can be held liable under a bad faith claim does not appear to have been specifically addressed by the Alabama courts. While it may no longer be true that "the tort of bad faith . . . is in the embryonic stage," *National Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala.1982), this area of the law is still developing. Other jurisdictions dealing with the question have, indeed, generally precluded such liability,[7] but some have reached different conclusions or recognized exceptions.[8] Especially in light of the distinction alluded to in *Henson*, and the fact that "any uncertainties about the applicable law" must be construed "in the plaintiff's favor," *De Perez,* 139 F.3d at 1380, the Court is reluctant to infer an absolute bar against claims such as Plaintiff's.

Finally, Defendants assert that liability here is "legally precluded . .

---

[7] *See e.g. Youngs v. Security Mut. Ins. Co.*, 775 N.Y.S. 2d 800, 801 (N.Y. Sup. 2004) (finding that the absence of an independent duty by an agent to the insured precludes a bad faith action against the agent  individually). The court in *Youngs* acknowledged, however, that "[t]here appears to be little to no case law on this issue."*Id.*

[8] *See, e.g. Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003) (recognizing instances of tort liability for breach of insurance contracts "even when there is no contractual privity between the defendant and the plaintiff").

.from flowing outward" by means of a claim for conspiracy. (Doc. 12 at 13.) Defendants cite *Nance v. Maxwell Federal Credit Union (MAX)*, where an employee brought a claim against his employer for conspiracy to commit an ADEA violation. 186 F.3d at 1342.   The Eleventh Circuit affirmed the dismissal of the employee's conspiracy claim, noting that ADEA claims are "governed by a complex statutory scheme," which specifically states that "liability is limited to 'employers.'" *Id.* The comparison of *Nance* to the present case is inapposite, as the tort of bad faith is not governed by any such "complex statutory scheme," and cannot possibly "frustrate congressional intent." *Id.*  Indeed, the *Nance* court's concern for respecting authorial intent is, for this judicially recognized cause of action, best observed by leaving the question to the Alabama courts.  As Defendants have failed to meet the heavy burden necessary to show fraudulent joinder, this matter is due to be remanded.

IV.   Conclusion.

For the reasons stated herein, this Court grants Plaintiffs' motion.[9]

---

9. As this matter is due to be remanded, Defendants' motion to dismiss Cummings is rendered moot.

This matter will be remanded to the Circuit Court of Sumter County, Alabama from whence it came.   A separate order consistent with this Opinion is issued herewith.

Done this <u>21st</u> day of <u>January 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

**153671**